**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| STEPHEN SIMMONS, | : | |
|  | : | Civil Action No. 05-3661 (JAP) |
| Petitioner, | : | |
|  | : | |
| v. | : | **O P I N I O N** |
|  | : | |
| STATE OF NEW JERSEY, et al., | : | |
|  | : | |
| Respondents. | : | |

**APPEARANCES:**

Stephen Simmons, Pro Se
# 211
Special Treatment Unit
30-35 Hackensack Avenue
P.O. Box 699
Kearney, NJ 07032

David L. DaCosta
Deputy Attorney General
Office of the NJ Attorney General
25 Market Street, P.O. Box 112
Trenton, NJ 08625
Attorney for Respondents

**PISANO, District Judge**

Petitioner, Stephen Simmons, filed the within petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254. Respondents filed an Answer, and Petitioner submitted a Traverse in response. The Court has considered all submissions. For the reasons set forth below, the Petition will be denied.

**BACKGROUND**

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply reproduce the Superior Court of New Jersey, Appellate Division's ("Appellate Division") factual recitation:

> On July 22, 1999, S.P.S.[1] pled guilty to fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3b, and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4a.  He was sentenced to a five-year term of imprisonment with two-and-one-half year period of parole ineligibility.  Prior to his release from prison, the State filed a petition seeking his civil commitment to the Special Treatment Unit (STU), pursuant to the SVPA.[2]
>
> Following a probable cause determination and order authorizing S.P.S.'s temporary civil commitment, a full hearing was scheduled for December 12, 2001.  Rather than proceed with the hearing however, S.P.S. stipulated that he was a sexually violent predator in need of continued confinement, care, and treatment.  Accordingly, he was committed to the STU for six months.
>
> A review hearing was thereafter held on August 12, and 13, 2002.  According to the State's proofs, S.P.S. had a long history of sexual offenses involving young boys dating back over twenty-five years.  In 1978, he was indicted by a Florida grand jury on two counts of sexual battery and one count of lewd and lascivious conduct in the presence of a child.  He was convicted the next year on the lewd and lascivious charge for masturbating in front of two boys, aged seven and nine.  S.P.S. was next arrested for a sexual offense in 1984.  This arrest was the result of an investigation by the

---

[1] "S.P.S." refers to Petitioner.

[2] "SVPA" refers to the New Jersey Sexually Violent Predator Act, N.J.S.A. 30:4-27.24, et seq.

FBI into a kidnapping complaint by the parents of a seventeen-year old boy. The boy's parents claimed that S.P.S. had abducted their son and taken him to Texas. An FBI investigation revealed that the 17-year old had been involved in a sexual relationship with S.P.S. since 1981, when the boy was 13, and that he had gone willingly to Texas with S.P.S. The FBI subsequently obtained the names of two other boys who had also been sexually abused by S.P.S. in 1981, when they were 12 and 14-years old respectively. The three boys were able to corroborate each other's stories, and S.P.S. was charged with three counts of sodomy and three counts of endangering the welfare of a child. At the time of his 1984 arrest, S.P.S. was working at a camp for youths. In 1986, he was convicted on two of the sodomy counts and sentenced to one to three years incarceration. He was paroled in December, 1987.

     S.P.S. was arrested for the instant offense in 1997. He was charged with sodomy, sexual abuse, endangering the welfare of a child, and five counts of possessing a sexual performance by a child. The victim was a 14-year old boy S.P.S. met in an internet chat room. The two met on multiple occasions and engaged in a variety of sexual activities. S.P.S. also admitted giving the victim drugs. As noted, in 1999, S.P.S. pled guilty to criminal sexual contact and endangering the welfare of a child, and the remaining counts were dismissed as part of the plea arrangement.

     During his civil commitment at the STU, explicit pornographic materials were seized from S.P.S.'s room on several occasions. In April, 2002, he was placed in the restricted activities program for sending child pornography through the mail to a known sex offender in another prison. Likewise, a memo from the Mail Review Committee, dated January 28, 2002, stated that numerous letters depicting sex, manuscripts containing explicit descriptions of sex with young boys, letters to, from, and about a victim, and letters containing pictures of young children were all found in S.P.S.'s mail during routine property review. And, only five days before this very review hearing, Department of Corrections (DOC) officers, responsible for providing security at the STU and conducting routine administrative searches, discovered more sexually explicit letters in S.P.S.'s room.

      At the review hearing, the State also presented the testimony of Drs. Michael R. McAllister and Donna LoBiondo.  Dr. McAllister diagnosed S.P.S. with paraphilia NOS (with features of pedophilia), personality disorder NOS, history of major depression, and history of substance abuse.  Dr. LoBiondo diagnosed him with pedophilia, history of depressive disorder, and personality disorder NOS with Narcissistic and Antisocial Traits.  Both testified that without continued treatment in the STU, S.P.S. was likely to commit another violent sexual offense.  Relying in part on S.P.S.'s lengthy history of illegal sexual activity with young boys and his ongoing problems in the STU, including sexually explicit writing while in confinement for a sexual offense and non-attendance at many of the treatment programs prescribed for him, both experts concluded that S.P.S. should remain committed for further treatment.

      At the conclusion of the hearing, Judge Perretti found clear and convincing evidence that S.P.S. continues to be a sexually violent predator suffering from abnormal mental conditions and personality disorders that adversely affect his emotional, cognitive and volitional acts so as to predispose him to re-offend in the future.  In reaching her decision, she placed great emphasis on his sexual writings, casual attitude towards his victims, insincere, dramatized, and confrontational behavior, rejection of treatment, and refusal to accept blame.  She also noted that contrary to S.P.S.'s claim that he was only interested in post-pubescent boys, his victims were seven, nine, twelve, thirteen, and fourteen years old.

(<u>In the Matter of the Civil Commitment of S.P.S.</u>, A-540-02T2 (Oct. 22, 2004), pp. 1-5).

    The Appellate Division affirmed the judge's findings and decision to continue Petitioner's commitment on October 22, 2004. Petitioner petitioned for certification to the New Jersey Supreme Court for review of the Appellate Division decision.  The New Jersey Supreme Court denied certification on March 23, 2005.

The instant petition was filed on July 22, 2005. On August 16, 2005, Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000). On January 27, 2006, Respondents filed an Answer and the relevant state court record. On February 27, 2006, Petitioner filed a Traverse.

### DISCUSSION

**A.   Petitioner's Claims.**

Petitioner asserts the following four arguments for habeas relief:

1.   Petitioner was denied the right to call any witnesses, in violation of the Sixth Amendment.

2.   The State's reliance on unproven allegations of criminal misconduct impermissibly circumvented Petitioner's Sixth Amendment right to have such allegations tried before a jury, and conflicts with the recent Supreme Court decision in Blakely v. Washington.

3.   The New Jersey court allowed hearsay evidence into evidence; the Appellate Division decision conflicted with a prior decision.

4.   There is a constitutional right to a jury trial in Sexual Violent Predator hearings.

See Petition for Writ of Habeas Corpus, ¶ 12.

Petitioner has raised the instant claims before the New Jersey state courts. To the extent that the claims have not been presented, this Court will excuse the exhaustion requirement, as the claims are not meritorious. See 28 U.S.C. § 2254(b)(2); Duncan v. Walker, 533 U.S. 167, 203 n.6 (2001)(noting that under § 2254(b)(2), a district court may deny non-exhausted,

5

non-meritorious claims); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003)(same).

**B.    Standards Governing Petitioner's Claims.**

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus.  The statute reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

>determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000), the Supreme Court explained the application of § 2254(d)(1). The Court analyzed subsection 1 as two clauses: the "contrary to" clause and the "unreasonable application" clause. The Court held that under the "contrary to" clause, "a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> A federal court may grant the writ under the "unreasonable application" clause, if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413. Habeas relief may not be granted under the "unreasonable application" clause unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief. <u>See</u> <u>id.</u> at 411; <u>see</u> <u>also</u> <u>Werts v. Vaughn</u>, 228 F.3d 178, 197 (3d Cir. 2000),

7

cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir.), cert. denied, Matteo v. Brennan, 528 U.S. 824 (1999).  Thus, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  See Werts, 228 F.3d at 197; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

With regard to 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to evidence in the record.  See Abu-Jamal v. Horn, 2001 WL 1609690, at *12 (E.D. Pa. December 18, 2001).  In addition, the state court record should be reviewed to assess the reasonableness of the state court's factual determinations.  See id.  Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Court of Appeals for the Third Circuit has ruled that this presumption of correctness can be overcome only by clear and convincing evidence.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001)(citing 28 U.S.C. § 2254(e)(1)).  "A finding that is well-supported and subject to the presumption of correctness is not unreasonable."  Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan, 156 F.3d at 198).

Furthermore, federal habeas courts ordinarily refrain from revisiting credibility determinations as "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review." Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001).  A habeas petitioner therefore "must clear a high hurdle before a federal court will set aside any of the state court's factual findings."  Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

**C.   Petitioner's Claims Regarding Witnesses and Evidence.**

In Ground 1 of his Petition, Petitioner argues that he was denied the right to present witnesses at his hearing.  In Ground 3 of his Petition, Petitioner argues that hearsay evidence was considered in the hearing.

With regard to Ground 1, the record reveals that Petitioner requested certain witnesses be produced at his hearing to show "that there was some sort of conspiracy to get him among detectives out in Suffolk County," and to "blame the Monmouth County prosecutor for the unfortunate acts committed by Sam Manzi in murdering someone." (See Respondents' Exhibit ("RE") 2, Transcript of Request for Witness Testimony, at p. 3). Petitioner apparently requested that detectives in Suffolk, Ocean, and Monmouth Counties, District Attorneys in Suffolk County, Prosecutors in Monmouth and Mercer Counties, Mr. Manzi, Mr. Manzi's mother, and Mr. Manzi's attorneys be produced as witnesses. (RE 2 at p. 4). Petitioner had not explained to the judge why he needed the witnesses, and what he expected to prove, and did not indicate that he had interviewed them. (RE 2 at p. 3).

The hearing judge found that the issues that Petitioner wished to present through these witnesses were not germane to the inquiry of whether or not Petitioner continued to be a sexually violent predator. (RE 2 at p. 3). The judge found that the issues Petitioner wished to present were "far beyond the realm and the materiality of evidence directed to the sole issue ...," (RE 2 at p. 3), and confined the hearing to evidence "presented by expert witnesses who can testify to the mental condition-current mental condition of [Petitioner] and the degree of risk

10

that he currently presents." (RE 2 at p. 4). In his Traverse, Petitioner argues that "there is no way, nor should there be, that the plaintiff should know what questions would have to be answered or how they would be."

With regard to Ground 3, the Appellate Division provides the following:

> S.P.S. next argues that the testimonies and reports of the State's expert witnesses were fatally flawed because they were based on inadmissible hearsay, namely unexamined statements made by his victim detailing their sexual relationship, which were included in a 1997 New York police report the doctors reviewed. We disagree.
>
> In the first place, S.P.S. has failed to show any variance between the victim's account and the sworn version S.P.S. offered at the time of his guilty plea that would give rise to any prejudice by virtue of the former's admission into evidence. Second, the challenged statements were not admitted substantively for the truth of their contents, but rather, pursuant to <u>N.J.R.E.</u> 802, for the limited purpose of apprising the factfinder of the basis for the expert opinions. Third, and most significantly, the victim's statement clearly played a very minor role, if any, in the experts' opinions and the court's evaluation of them. When asked if he considered the statement, Dr. McAllister replied, "to a small extent, yes." The court then admitted the statement "insofar as it's something that has added to or- or played a part in the evaluation . . . ." Dr. LoBiondo was also asked if she read the victim's statement and answered, "I believe I did in preparation for the - for the last hearing, yes," referring to the December 12, 2001 hearing at which she was supposed to testify before S.P.S. stipulated he was in need of treatment. Her response demonstrates a similar disregard for the hearsay. She did not even consider it while preparing for the most recent hearing.

(RE 2 at pp. 10-11).  The Appellate Division further found that it was clear that neither doctor nor the trial court relied on the victim's statement in reaching their opinions, and rejected Petitioner's hearsay argument.

In both Grounds 1 and 3, Petitioner seeks to challenge evidentiary decisions made by the hearing judge.  With regard to the witnesses, while the New Jersey Sexually Violent Predator Act does provide that the petitioner has a right "to present evidence," see N.J.S.A. 30:4-27.31, in this case, the judge made a decision that the witness's testimony was not relevant to the issue at hand.  Thus, Petitioner's claim that he was denied the right to call witnesses, in actuality, is a claim that the hearing judge improperly excluded witness testimony.  As to the claim regarding hearsay, the New Jersey courts found that the statement at issue was not relied upon, and that the statement was utilized to apprise the judge of the basis for the expert opinions.

Assuming, arguendo, that the hearing judge did err under state law in excluding the witnesses and in permitting the alleged hearsay testimony, a state's misapplication of its own law may constitute a violation of due process only in "rare" cases.  See id. ("when that misapplication has the effect of depriving a person of life, liberty, or property without due process of law in violation of the Fourteenth Amendment, the

resulting federal constitutional error can be corrected by a federal habeas court").  Evidentiary rulings may violate due process when the petitioner "was denied fundamental fairness at trial."  Hutchins v. Hundley, 1991 WL 167036 at *4 (D.N.J. Aug. 22, 1991)(Wolin, J.)(citations omitted); see also Kontakis v. Beyer, 19 F.3d 110, 120 (3d Cir.), cert. denied, 513 U.S. 881 (1994); Lisenba v. California, 314 U.S. 219, 228, 236 (1941)(holding that state court's evidentiary rulings may form the basis for habeas relief when they "so infused the trial with unfairness as to deny due process of law").

The appropriate inquiry is "whether the claimed error of law is a fundamental defect which inherently results in a complete miscarriage of justice or in an omission inconsistent with the rudimentary demands of fair procedure."  Hutchins, 1991 WL 167036 at *4 (citing United States v. De Luca, 889 F.2d 503, 506 (3d Cir. 1989), cert. denied, 496 U.S. 939 (1990))(other citations omitted).  The Supreme Court has further stated that "an otherwise valid conviction should not be set aside if the reviewing court may confidently say on the whole record that the constitutional error was harmless beyond a reasonable doubt." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986).  An error is not harmless if "it aborts the basic trial process or denies it altogether."  Hutchins, 1991 WL 167036 at *5 (citing Rose v. Clark , 478 U.S. 570, 578 n.6 (1986)).

Applying these principles to the instant case, this Court finds that Petitioner's case is not the "rare" instance where evidentiary rulings have violated his rights to due process. A review of the whole record demonstrates that the hearing process was fundamentally fair. Petitioner's counsel was present and was available to cross-examine and present evidence regarding Petitioner's mental capacity and his likelihood to engage in acts of sexual violence if not confined.

Nonetheless, even if the hearing judge's evidentiary rulings were in error, there was sufficient evidence for the judge to conclude by clear and convincing evidence that the Petitioner was a sexually violent predator in need of further confinement. As noted in the Appellate Division's recitation of the facts, <u>see supra</u>, pp. 2-4, Petitioner's history of sex crimes, behavior while confined, attitude, refusal to participate in treatment, etc., were sufficient factors to find that Petitioner was likely to engage in future acts of sexual violence, if not confined.

Thus, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the state court determinations have "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

14

proceeding." Accordingly, these grounds for a writ of habeas corpus will be denied.

**D.     Petitioner's Claims Regarding Jury Trial.**

In Ground 2 of his Petition, Petitioner argues that the State relied on unproven allegations of criminal misconduct in his hearing, circumventing his right to have allegations tried before a jury. Petitioner also argues that the State's actions conflict with Blakely v. Washington, 542 U.S. 296 (2004). In Ground 4 of his Petition, Petitioner argues that the right to a jury trial is "entrenched in SVP statutes."

It is clear that under New Jersey law, there is no right to a jury trial in SVPA hearings. See In re the Commitment of J.H.M., 367 N.J. Super. 599, 606-08 (App. Div. 2003), certif. denied, 179 N.J. 312 (2004)(finding that persons subject to commitment under the SVPA are not entitled to more constitutional protections than afforded by the statute, and noting that the SVPA statute does not provide for jury trials), disapproved of on other grounds in, In re Civil Commitment of A.E.F., 377 N.J. Super. 473, 493 (App. Div. 2005).

The United States Supreme Court has not decided the issue of whether due process requires a jury trial in civil commitment proceedings,[3] and has not incorporated the Seventh Amendment

---

[3] But see United States v. Sahhar, 917 F.2d 1197, 1206-07 (9th Cir. 1990)(due process does not provide right to jury trial in civil commitment proceedings).

right to a jury for such cases.[4]  However, the Supreme Court has explained that § 2254(d) directs that if a state court "reached a conclusion 'opposite to that reached by [the Supreme Court] on a question of law' or confronted 'facts that are materially indistinguishable from a relevant Supreme Court precedent' and reached the opposite result, then its decision is contrary to clearly established law."  Poole v. Goodno, 335 F.3d 705, 708 (8th Cir. 2003)(quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)).  The Court of Appeals for the Eighth Circuit noted this, and recently held that because there is no "clearly established" Supreme Court law which would require a jury trial in cases dealing with civil commitment of sexual predators, a habeas petition pursuant to 28 U.S.C. § 2254 asserting such an argument must be denied.  See Poole, 335 F.3d at 710-711.

The Eighth Circuit also pointed out that the Supreme Court has permitted states to make their own procedural rules for commitment cases.  See id. at 711 (citing Addington v. Texas, 441 U.S. 418, 431 (1979)).  The Eighth Circuit noted that, "[a]lthough the Court did not speak directly about juries in

---

[4] The Seventh Amendment to the United States Constitution states: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise reexamined in any Court in the United States, than according to the rules of the common law."  The Seventh Amendment right to a jury trial does not apply to state court proceedings.  See City of Monterey v. Del Monte Dunes at Monterey, 526 U.S. 687, 719 (1999).

Addington, it certainly left it open to states to employ their own preferred procedures. It ruled that a reasonable doubt standard is not required to meet the 'constitutional minimum' for civil commitments, and the same type of reasoning could be applied to the type of jury trial issue we face." Id. at 709.

This Court agrees with the Eighth Circuit; that is, in order to obtain the writ of habeas corpus, pursuant to 28 U.S.C. § 2254, Petitioner must demonstrate the state court decision denying his claim that he is entitled to a jury trial "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). As was the case in the Eighth Circuit, Petitioner has not met this standard.

This Court further finds that Petitioner is not entitled to habeas relief based upon his argument that the state proceedings violate the Supreme Court decision in Blakely v. Washington, 542 U.S. 296 (2004)(finding that enhanced sentence based on fact that was neither submitted to jury and found beyond a reasonable doubt, nor admitted by Petitioner, violated Petitioner's Sixth Amendment right to jury). First of all, Blakely was not made retroactive to cases on collateral review, such as Petitioner's case. See United States v. Price, 400 F.3d 844, 849 (10th Cir.) (Blakely does not apply retroactively to cases on collateral

17

review), cert. denied, 126 S. Ct. 731 (2005); see also Lloyd v. United States, 407 F.3d 608 (3d Cir.), cert. denied, 126 S. Ct. 288 (2005); United States v. Rennert, 2006 WL 839025 at *2 (3d Cir. March 31, 2006)(unpubl.).  Second, as noted, Petitioner has not demonstrated neither a right to a trial by jury, nor that proof "beyond a reasonable doubt" is required to continue his commitment.  New Jersey courts have found the "clear and convincing" standard an appropriate standard in civil commitment proceedings and SVPA cases.  See In re Commitment of W.Z., 173 N.J. 109, 133-34 (2002); In re Commitment of J.H.M., 367 N.J. Super. at 607.  In fact, the "clear and convincing" standard was approved for civil commitment proceedings by the United States Supreme Court in Addington v. Texas, 441 U.S. 418, 432-33 (1979).  In that case, the Supreme Court reasoned that: "the reasonable-doubt standard is inappropriate in civil commitment proceedings because, given the uncertainties of psychiatric diagnosis, it may impose a burden the state cannot meet and thereby erect an unreasonable barrier to needed medical treatment."  Id. at 432.

As such, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding."  These grounds for a writ of habeas corpus, will therefore be denied.[5]

### CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254 is denied.  The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253.

An appropriate Order accompanies this Opinion.


/s/Joel A. Pisano
JOEL A. PISANO
United States District Judge

Dated: July 19, 2006

---

[5] Respondents also argue that State of New Jersey, Paul Lagana, and Peter Harvey are not proper respondents in this habeas petition, as they are not custodians of Petitioner for purposes of the habeas statute.  Indeed, the proper respondent in a habeas petition is the warden of the facility in which the petitioner is incarcerated. See Rules Governing Section 2254 Cases, Rule 2, Advisory Committee Notes; see also Yi v. Maugans, 24 F.3d 500, 507 (3d Cir. 1994).  In this case, the proper respondent is Grace Rogers, the Administrator of the Adult Diagnostic and Treatment Center where Petitioner is housed.  Thus, all other named respondents will be dismissed from this action.